CAMPBELL *et al.*
*vs*
WEST *et al.*

Wherefore the decree is affirmed.

*Guthrie and Nicholas* for plaintiffs: *Duncan* for defendants.

---

CHANCERY.

# Campbell *et al. vs* West *et al.*

APPEAL FROM THE FAYETTE CIRCUIT.

*Case* 69.

*Equity Jurisdiction. Will. Probate.*

*October* 26.

CHIEF JUSTICE ROBERTSON delivered the opinion of the Court.

The allegations of the bill.

EDWARD WEST, of Lexington, died in 1827, and administration of his chattels was granted to his daughter, Catharine Campbell, who afterwards died in 1829, leaving three heirs, the two survivors of whom, being of legal age in 1836, then united with others, *as the heirs* of the said Edward, in a petition to the Circuit Court of Fayette for the sale and distribution of a lot with three houses on it in the said city which, as alledged, had descended from him as their intestate ancestor.

Afterwards, in 1839, the said real estate having been sold on a credit, pursuant to a decretal order rendered on the said petition, the said two surviving heirs of Mrs. Campbell filed a bill in the same Court for enjoining the distribution of the proceeds of one of the houses and its appurtenant grounds, and for a decree for the final payment of the whole of that fund to themselves, on the ground that the said Edward, (as alledged in the bill,) had duly published a valid last will devising that property to their mother, and that the will had been lost or fraudulently destroyed or suppressed before his death by some unknown person.

<span style="float:right">CAMPBELL *et al.*<br>*vs*<br>WEST *et al.*</span>

The defendants, in their answers, denied the allegations as to the publication and loss or destruction of the will. But, upon the depositions of two persons who testified that they were subscribing witnesses to a will published by the said Edward, the Circuit Court decreed to the complainants the payment of the whole sum produced by the house and ground claimed in their bill. And the other parties have appealed to this Court.

<span style="float:right">Answer and decree of Circuit Court.</span>

We have no doubt that the non-residence of all the parties to the distributable fund produced by the decretal sale, gave to the Chancellor, who controlled that fund, jurisdiction to enjoin distribution until the probate or rejection of the alledged will in the County Court. But the concession that such a bill, *quia timet*, might have been manitained in the Court having possession of the fund does not imply an admission of jurisdiction in the same Court to establish the will or any devise in it.

A Court of Equity should not entertain jurisdiction to establish a will merely in consequence of the loss of it. The contents of a lost will may be established in the ordinary Court of Probate, and unless there be proof of spoliation, suppression, or other fraud, or the necessity of a discovery, in all of which cases a Court of Equity may exercise more effectual power than a County Court might, the probate of an entire will should be in the County Court only: *Hunt* vs *Hamilton*, (9*th Dana*, 90.)

<span style="float:right">A Court of Equity should not entertain jurisdiction to establish a will merely in consequence of the loss of it, but there should, to give jurisdiction, be some proof of spoliation, suppression, or other fraud, or a necessity for discovery.</span>

There is no proof of fraud, spoliation, or suppression by any of the appellants in this case, and it is clear that the subscribing witnesses, whose depositions are now re

CAMPBELL *et al.*
*vs*
WEST *et al.*

lied on as proving the publication and contents of a will, would be as competent and effectual in a trial for probate in the County Court of Fayette.

And were it admitted that a Court of Equity, without exercising probate jurisdiction, might decide incidentally on the claim of the complainants to the property now sought by them under the alledged lost will and, *pro hac vice,* decree to them the proceeds, as has been done— still a decree so anomalous and contingently so inconvenient and incongruous as to other interests under the will, or independently of it, if it should never be established as a valid lost will,' should never be rendered unless there should be a peculiar necessity for it, and the equity should be manifest and unquestionable.

And it seems to us that no such necessity exists in this case, and that, moreover, the alledged equity is far from being unquestionable or decisive, for the following reasons:

1. About twelve years elapsed between Edward West's death and the filing of this bill; and not only was no attempt ever made, in the mean time, to obtain probate in the County Court, but all persons interested seemed to have acquiesced in his apparent intestacy.

2. The administration by Mrs. Campbell herself, on the goods of her father, as those of an intestate; the oath as to his intestacy, which she, of course, made in the County Court, and the petition by the complainants, her sons, for obtaining the sale of the real estate as property undevised, must operate persuasively on the conscience of a Court of Equity, and though these facts do not amount to a conclusive estoppel, yet they do certainly conduce to the conclusion that Edward West did, in fact, die intestate, and consequently, that the alledged will was destroyed by himself, or with his assent, at the time of its destruction, or his acquiescence after he knew that it had been destroyed. And this tendency is fortified by the fact that Mrs. Campbell, herself, was the depository of the will, the publication of which is relied on in this case, and was also the nurse and house-keeper of her father.

*Circumstances conducing to show that West had probably died intestate.*

3. From the facts proved, it does not appear probable, or scarcely possible, that any other interested person than

the testator, or Mrs. Campbell, could have had the means
of getting hold of the will.   There is no proof or circumstance affording any clue to a probable conjecture as to when or how it happened to leave the secret drawer where she said that she had secured it.   It was delivered to her nearly a year before the testator's death.   Only about three days before his death she told Mrs. Young, (one of the subscribing witnesses,) that it had been taken from the drawer in which she had kept it, and seemed to apprehend that her father had "changed his mind" and destroyed it himself—and though, when apprised by Mrs. Young of that communication he, in her apprehension, manifested surprise, and said he would make another will; nevertheless he did not respond that he had not "changed his mind," nor revoked the will, or authorized its destruction, but said only that he had not *seen* it since he gave it to Mrs. Campbell to keep.

All this may be reconcilable with the hypothesis that he had revoked the will which devised all his estate to three only of his ten children, and even with the assumption that Mrs. Campbell may herself have been apprised of the destruction of it, and acquiesced, under the belief that he sanctioned it, and hoping also that as all his other children were non-residents of Kentucky, she might obtain more, or certainly as much, by a substituted will which he might afterwards choose to make.

4. The fact that the testator knew, or had reason to believe, that the will was destroyed, and nevertheless did not publish any other, although it may not prove a revocation, may tend to show that he consented to die without a will, and finally approved the destruction of that which he had once published.

Perhaps these considerations might not be deemed sufficient to prevent the probate of the lost or destroyed document, in the County Court—but they ought, in our opinion, to be amply sufficient to induce a Court of Equity to forbear to interpose now and give extraordinary relief, and especially as it is at least questionable whether it has jurisdiction to establish the entire will as proved, and as also such conclusive recognition of the right claimed under only one of the devises might produce the incongruity

CAMPBELL *et al.*
*vs*
WEST *et al.*
hereafter to be exhibited by the establishment of the will as to one of several devisees, and the non-establishment or perhaps rejection of it, (by the Court of Probate,) as to the other devisees.

On these grounds, we are of the opinion that there being no difficulty in proving the publication and contents of the will in the County Court, and there being no proof of a fraudulent suppression or spoliation by any of the appellants, a Court of Equity ought not, now especially, to assume jurisdiction to decide on the ultimate rights of the parties.

Why did neither the appellees nor their mother ever attempt to obtain probate in the County Court? Or why not attempt it yet?

A suspension of the distribution until the question of regular and full probate can be tried in the County Court, if the appellees shall elect to try it there within reasonable time, is as much as they can, in our judgment, be equitably entitled to claim on the facts now exhibited. And, intending to leave the question of legal probate in the ordinary forum, unconcluded and unfettered, we would still accord to them such auxiliary intervention by the Chancellor, for the prevention of possible loss or inconvenience, which might otherwise result to them in the event of a final probate of the lost or destroyed will.

The question of legal probate in the County Court is essentially different from that of equitable relief in this Court, without such probate or any good excuse for never obtaining it. And all we have said to show that the decree rendered in this case ought not to stand, is intended to be restricted to the question of equity merely, and as in no way concluding the question of law for the decision of the ordinary forum on any future application for probate.

Under existing circumstances, serious doubt is sufficient to prevent relief, as sought in a Court of Equity, even if the question of jurisdiction be waived. But the same doubt would not be so decisive in a trial for probate in the County Court in which the inquiry would be whether Edward West legally published a valid will; what was the will; was it ever revoked or destroyed with his consent or subsequent acquiescence?

*The Chancellor, tho' he refuse to establish a will, may nevertheless sustain a bill for restraining distribution until an opportunity for proving a will before the County Court.*

And on these points we are not sufficiently satisfied to be willing to decide, were it admissible in this case, that the said West died intestate.

Decree reversed and cause remanded, with instructions to dismiss the bill without prejudice, unless the appellees elect so to amend it as to entitle them to an order for suspending distribution until they can have a reasonable opportunity to try the question of will or no will in the County Court.

*Hickey & Sayre* for appellants: *Robinson & Johnson* for appellees.